[No. 1556, December 4, 1913.]

WILLIAM FRASER, Appellant, v. STATE SAVINGS
BANK et al., Appellees.

SYLLABUS (BY THE COURT)

1. The Court is only required to find the ultimate facts in
controversy, raised by the issues in the case, and is not
required, nor is it proper, to set out the evidence upon which
it relies in determining such ultimate facts.

P. 350

2. Findings are not to be construed with the strictness of
special pleadings. It is sufficient if from them all, taken to-
gether with the pleadings, the Court can see enough upon a
fair construction to justify the judgment of the trial Court,
notwithstanding their want of precision and the occasional
intermixture of matters of fact and conclusions of law.

P. 351

3. Where the trial Court hears all the witnesses testify
and is thus able to observe their manner and demeanor while
testifying, the Appellate Court will not review the evidence

further than to determine whether or not the findings are supported by substantial evidence; in the absence of such an overwhelming weight of evidence against such findings as would clearly show that the trial Court erred in its conclusions drawn therefrom, and, in an equity case, where the Court hears the witnesses ore tenus, there is no reason for a departure from the rule.

P. 352

4. Mere inadequacy of consideration is not sufficient, in and of itself, to avoid a contract.

P. 356

5. Where parties to a contract, construe it as having created a partnership relation, and act upon such construction, the Court will not, after rights have accrued thereunder, by reason of such construction, give to the contract a different construction, which would be at variance with the understanding of the parties to it.

P. 357

Appeal from the District Court of Taos County; Thomas D. Leib, District Judge; affirmed.

RENEHAN & WRIGHT, Santa Fe, N. M., for appellant.

There are no findings of facts; hence, the decree is inoperative. Luna v. Coal R. R. Co., 16 N. M. 71; Miles v. McCallan, 3 Pac. 610; Elder v. Frevert, 3 Pac. 237; Trustees v. Retsch, 151 N. Y. 321, 37 L. R. A. 305; Brock v. R. R. Co., 114 Ala. 431; Rhodes v. Bank, 66 Fed. 512, 34 L. R. A. 742; Searcy County v. Thompson, 66 Fed. 92.

Mere conclusions of law, though called findings of fact, are not so. Murphy v. Bennett, 68 Cal. 528.

So-called findings, if findings at all, are not founded on sufficient evidence. Millheiser v. Long, 10 N. M. 99; Potters v. Hewitt, 11 N. M. 1; Land Co. v. Gutierrez, 10 N. M. 177; Torlina v. Trorlicht, 6 N. M. 54; Light Co. v.

Improvement Co., 16 N. M. 94; Richards v. Pierce, 14 N. M. 334; Hancock v. Beasley, 14 N. M. 239; Robero v. Coleman, 11 N. M. 537; Rush v. Fletcher, 11 N. M. 555; Carpenter v. Lincoln, 12 N. M. 388; Gale & Farr v. Salas, 11 N. M. 211; Ortiz v. Bank, 12 N. M. 519; Marquez v. Land Grant, 12 N. M. 445.

Duty of this Court to consider all of the facts in this case and enter such a decree as "may be agreeable to law." Laws 1907, sec. 38, p. 116; Armijo v. Electric Co., 11 N. M. 250.

Sufficient and substantial evidence. Jones on Ev. (2d ed.), p. 6; 37 Cyc. 506; Jenkins v. Alpena Cement Co., 147 Fed. 643.

Admission by conduct. 1 Greenl. Ev. (16th ed.) sec. 195, and cases cited.

Court should follow the principle that in equity the whole record will be considered without regard to findings of fact. 4 A. & E. Enc. L., p. 572; 13 A. & E. Enc. L., 570, 571, notes 7 and 8.

A contract partly written and partly parol is not a written contract. Cunningham v. Fiske, 13 N. M. 331.

Partnership agreement is within the Statute of Frauds. 22 Enc. L. (2d ed.) 67; Wilson v. Ray, 13 Ind. 1; Wahl v. Barnum, 116 N. Y. 87, 5 L. R. A. 623; Packet Co. v. Sickles, 5 Wall. 594.

Such a partnership could be dissolved by either party at any time. Wahl v. Barnum, 5 L. R. A. 594.

Even where a partnership is for a fixed term, one partner can dissolve it subject to liability for damages for breach of contract, unless circumstances are such as would entitle him to a decree of dissolution, but the remedy is at law. 30 Cyc. 651; Karrick v. Hannaman, 168 U. S. (L. Ed.) 484; C. L. 1897, sec. 2647; Benton v. Roberts, 4 La. Ann. 216; Murrell, v. Murrell, 33 La. Ann. 1233; Gillett v. Chaves, 12 N. M. 353.

The word "should" is imperative. 36 Cyc. 434; Smith v. State, 142 Ind. 288; Lynch v. Bates, 139 Ind. 206.

Fraser had a right to dissolve the partnership, if one,

being accountable for damages only. 22 Enc. L. 205; 30 Cyc. 651, n. 8.

Fraser was within his rights when he modified the contract with Martin. 30 Cyc. 663, 688.

In no event did the minds of Fraser, Bidwell and Probert meet upon a copartnership agreement which did not exclude from its operation the Manly deal. 1 Page on Contracts, sec. 28, et seq., secs. 55, 62, 74, 77, et seq.

Duress, undue influence, gross inadequacy of consideration, etc., would render the deeds and copartnership agreement void. 1 Page on Contracts, secs. 221 to 235, inc.

The deed and the partnership agreement construed together at most created a lien in favor of Bidwell and Probert. 2 Page on Contracts, sec. 1123 and 1752.

A. C. Voorhees, Raton, N. M.; Frank T. Cheetham, Taos, N. M., for appellees.

The law recognizes the right of a man to dispose of his property as he sees fit. Eyre v. Potter, 15 How. 59-60; French v. Shoemaker, 11 Wall. 333.

Mere inadequacy of price is in itself no ground for setting aside a contract. Wharton on Contracts, sec. 165; Eyre v. Potter, 15 How. (U. S.) 42; Wharton on Contracts, sec. 518; Lee v. Kirby, 104 Mass. 420; Harrison v. Town, 17 Mo. 237; Davidson v. Little, 22 Penn. St. 245.

All the contested facts material to the issue in this case have been found by the trial court and there is substantial and sufficient evidence to sustain the same. Miles v. McCallan, 1 Ariz. 491, 3 Pac. 810; Runkle v. Burnham, 153 U. S. 216; St. Louis v. Rutz, 138 U. S. 226; Zang v. Stover, 2 N. M. 29; Crolot v. Maloy, 2 N. M. 198; Vasquez v. Ppielgelburg, 1 N. M. 464; Romero v. Desmarais, 5 N. M. 142, 20 Pac. 787.

This rule has been generally followed by the courts in New Mexico. Moore v. Western Meat Co., 16 N. M. 107, 115 Pac. 787, 78 Fed. 776.

Findings cannot be examined in this Court, even if against the preponderance of the evidence. Romero v.

Desmarais, 5 N. M. 142, 20 Pac. 787; Waldo v. Beckwith, 1 N. M. 97; Archibeque v. Miera, 1 N. M. 188; Rube v. Abreu, 1 N. M. 247.

Court is limited, in reversing, to the consideration of the correctness of the findings of the law and must affirm if there be any evidence in support thereof. Beuttel v. Magone, 157 U. S. 154; Lehnen v. Dickson, 148 U. S. 71, 70 Fed. 776; Moore v. Meat Co., 16 N. M. 107, 113 Pac. 827.

Cannot reverse where there is "sufficient" or "substantial" evidence to sustain the findings. Torlina v. Trorlicht, 5 N. M. 148, 21 Pac. 68; Field v. Romero, 7 N. M. 630, 41 Pac. 517; Givens v. Veeder, 9 N. M. 256, 30 Pac. 316; De Baca v. Pueblo, 10 N. M. 38, 60 Pac. 73; Romero v. Coleman, 11 N. M. 553, 70 Pac. 559; Rush v. Fletcher, 11 N. M. 335, 70 Pac. 559; Ortiz v. Bank, 12 N. M. 519, 78 Pac. 529; Candelaria v. Bank, 13 N. M. 360, 84 Pac. 1020; Moore v. Meat Co., 16 N. M. 107, 113 Pac. 827; Baker v. Trujillo de Armijo, 128 Pac. 73.

Co., 121 U. S. 325; Undue Influence, Old Age, etc. Curtis v. Kirkpatrick, 75 Pac. 760; Chrisman v. Chrisman, 18 Pac. 6; Eddy's Appeal, 109 Pa. St. 406, 1 Atl. 425; President, etc., et al., v. Merritt, 75 Fed. 480; Buckney v. Buckney, 38 W. Va. 168, 18 S. E. 383; Parsons on Contracts, 383; Beach Modern Law of Contracts, pp. 1818-1819, and cases cited; Wharton & Stille Med. Juris., pp. 4, 5; Devlin on Deeds, par. 68; Drefahl v. Security Sav. Bank, 107 N. W. 179; Harlan v. Harlan, 102 Ia. 701, 72 N. W. —; Eyre v. Potter, 15 How. 59.

Fraud. Maxwell Land Grant S. v. Maxwell Land Grant

Has a partner the right to dissolve a partnership for a stipulated time? Karrick v. Hannaman, 168 U. S. 335, 42 L. Ed. 489; Rutland Marble Co. v. Ripley, 77 U. S., 10 Wall. 339; Batten, Specific Performance, 165-167; 3 Lindley, Partnerships, ch. 10, par. 4; Pomeroy, Specific Perf., par. 290; Scott v. Rayment, L. R. 7 Eq. 112; Satterthwait, v. Marshall, 4 Del. Ch. 337; Reed v. Vidal, 5 Rich. Eq. 289; Somerby v. Buntin, 118 Mass, 279, 19 Am. Rep. 459; Story, Partnerships, par. 275; Gerard v.

Gateau, 84 Ill. 121, 25 Am. Rep. 438; Henn v. Walsh, 2 Edw. Ch. 129.

Mere dissatisfaction by one partner will not justify him in filing a bill for a dissolution. Story, Partn., pars. 275-6; Story, Eq. Jur., par. 673; Lindley Partn., p. 575, par. 2; Ferrero v. Buhlmeyer, 34 How. Pr. 33; Pearpoint v. Graham, 4 Wash. C. C. 232; Peacock v. Peacock, 16 Ves. Jr. 49; Cash v. Warnshaw, 66 Ill. 402; Van Kuren v. Trenton Loco. & Mach Mfg. Co., 13 N. J. Eq. 302.

RENEHAN & WRIGHT, for appellant on rehearing.

Probert's failure to testify raises a presumption that his testimony would be damaging. Young v. Corrigan, 208 Fed. 436.

Court should have considered every phase of the testimony and awarded appropriate relief. Rexford v. Woodland Co., 208 Fed. 296; Saunders v. Paper Co., 208 Fed. 442.

There were no findings of facts. Luna v. Railroad Co., 16 N. M. 71.

The minds of the parties must meet as to all the terms of the contract. 9 Cyc. 245, 398, 408; Hearne v. Marine Ins. Co., 20 Wall. 488; Sells v. Sells, 1 Drewry & Shales, 42; Mortimer v. Shortall, 2 Drewry & Warren, 372; Smith v. Mackin, 4 Lans. 46; Page v. Higgins, 5 L. R. A. 152, note and cases cited; Rowland v. Railroad Co., 29 Am. St. 175; Hartford & New Haven Railroad v. Jackson, 63 Am. Dec. 177; Green v. Stone, 55 Am. St. Rr. 577, (N. J. Eq.); Rogers v. Collier, 23 Am. Dec. 153; Burkhalter v. Jones, 3 Pac. 559; 1 Page Contr., secs. 74 and 77; Chitty on Contracts, (6 Eng. Ed.) p. 13; Sawyer v. Hovey, 3 Allen 331; 2 Pom. Eq. Jur. (3d ed.) sec. 870; 1 Parsons on Contracts, 483; Benjamin on Sales, sec. 398; Henry School Twt. v. Meredith, 32 Ind. App. 607; Calhoun v. Teal, 30 So. 288; Fifer v. Clearleld Co., 62 Atl. 1122; Kelly v. Ward, 60 S. W. 311; Crispill v. Cain, 19 W. Va. 438; Boehm v. Yanquell, 15 Ohio C. C. 454; Moore v. Cox, 51 Pac. 630.

One of the most satisfactory evidences of fraudulent intent on the part of the grantee will be found in his activity in procuring the conveyance. Booth v. Turtle, L. R. 16 Eq. 183; Catalini v. Catalini, 19 Am. St. R. 73; Goodwin v. McMinn, 74 Am. St. R. —; Diwee v. Thompson, 90 S. W. 193; Clark v. Haney, 50 Am. R. 536; Danzeisen's App., 73 Pa. 65; Barton v. McMillan, 20 Can. S. C. 404; Barnard v. Flinn, 8 Ind. 204; Seichrist's Appeal, 66 Pa. 237; 9 Cyc. 245, and citations; 9 Cyc. 394, and citations; Moffett, et al., v. City of Rochester, 91 Fed. 28; Champion v. McCarthy, 228 Ill. 87; Shedd v. Seefeld, 230 Ill. 118.

The effect of inconsistent allegations and denials in the answer of defendants. 31 Cyc. 92; Schlesinger v. McDonald, 106 N. Y. App. 570; Losch v. Pickett, 12 Pac. 822; Butler v. Kaulback, 8 Kans. 668; Wright v. Bacheller, 16 Kans. 259; Wiley v. Keokuk, 6 Kans. 94; Schenk v. Schency, 10 N. J. L. 276; 39 Cent. Dig., sec. 81; 31 Cyc. 87 and cases cited.

## STATEMENT OF FACTS.

On December 16, 1910, the appellant and the appellees, John B. Bidwell, and A. Clarence Probert, made and executed the following agreement, viz:—

"THIS AGREEMENT, made and entered into this 16th day of December, 1910, by and between WILLIAM FRASER as party of the first part, and JOHN B. BIDWELL and A. CLARENCE PROBERT, as parties of the second part, that for and in consideration of the sum of Two Thousand dollars and other more valuable consideration we hereby form ourselves into a joint and co-partnership under the firm name and style of FRASER, BIDWELL & PROBERT for the purposes of developing, improving, selling and disposing of the mineral properties of the said William Fraser within a period of two (2) years' time from this date, or as long thereafter as the said William Fraser may agree to and with said parties of the second part, and in further consideration for the time and monies expended by the said John B. Bidwell and A.

Clarence Probert a Warranty Deed has been executed and given to each one of the said parties of the second part, conveying an undivided one-third interest in and to all of said mining properties belonging to the said William Fraser and if said mining properties are not sold or disposed of within the said period of time mentioned above then said warranty deeds are to be void and of no effect and the said mining properties mentioned in said warranty deeds are to revert back to the said William Fraser.

"It is further hereby mutually understood and agreed that in the event of an expiration or forfeiture of this agreement or contract that all monies expended by the said John B. Bidwell and A. Clarence Probert, parties of the second part, that the said William Fraser hereby agrees to reimburse and pay back the whole amount of said monies in the form of a lien against all of said properties mentioned in said Warranty Deeds, so that the said John B. Bidwell and A. Clarence Probert shall not be out any moneys that were expended in this copartnership or transaction by them.

"IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals the day and year first above written.

(Signed)    "William Fraser      (Seal)
(Signed)    "John B. Bidwell     (Seal)
(Signed)    "A. Clarence Probert  (Seal)
"Signed, Sealed and delivered in presence of
(Signed)    "J. Wright Giddings
(Signed)    "Fidel Cordoba, Jr.
(Signed)    "Enrique Gonzales."

On the same day, and as part of the same transaction, appellant made, executed and delivered to each of the above named appellees a warranty deed, signed by appellant and his wife, by which he conveyed to each, respectively, an undivided one-third interest in and to all his mining properties, therein named, and also a like interest in and to a toll road owned by him in the Rio Hondo Canon leading to said mining properties and the grantor's rights in

the Laroux Grant. On the same day, or shortly thereafter, Bidwell placed to Fraser's credit in the Taos Savings Bank or applied on Fraser's debts, approximately $2,000.00.

Thereafter, on February 18, 1911, Fraser, Bidwell and Probert made and entered into a written contract with Charles T. Martin, by which they agreed to convey to him for the sum of $77,500, all the property above mentioned. The contract was signed by Fraser, Bidwell and Probert, a co-partnership, by each of the individuals, composing the alleged partnership, and by Martin. By the terms of the contract $20,000 was to be paid in cash and the balance was to be paid in two installments, at stated times. Pursuant to the contract, the $20,000 was paid, which was turned over to Probert, and by him deposited in the Taos Savings Bank, out of which sum all of Fraser's debts were paid, amounting to approximately the sum of $10,000, and some cash was distributed to each of the parties to the so-called partnership agreement by Probert. Deeds to the property were executed by the three parties, as required by the contract, which were placed, under the contract, in escrow with the Hanover National Bank of New York City, for delivery to Martin upon compliance by him with the terms of the contract. Subsequently, Martin paid to the Hanover National Bank the first installment of $18,500, as required by the contract, which payment was made in September, 1911. Immediately prior to such payment, Fraser instituted this suit in the lower Court for the dissolution of the alleged co-partnership between Fraser, Bidwell and Probert; the recision of the two deeds for one-third interest each in Fraser's property to Probert and Bidwell; the accounting for $20,000, part of which had been taken by Bidwell and Probert, with proper commission allowances to Probert and Bidwell for their services quantum meruit, and their reimbursement for their expenditures under the co-partnership agreement; the appointment of a receiver to carry out the undertaking with Charles T. Martin; the injunction of Probert and Bidwell and the State Savings Bank from interfering with Fraser

in carrying out the contract with Martin and certain modifications thereof to which Fraser alone had agreed, and to restrain Probert and Bidwell from directing the Hanover National Bank not to receive the payment of $18,500 about to fall due as modified by certain agreements made by Fraser, individually, and the authorization of the receiver to take and hold, under proper bond, the money Martin should pay under said contract. The basis of the complaint was fraud, in that advantage had been taken by Bidwell and Probert of Fraser's weakened mental condition, in the transaction.

The appellees answered, denying all the allegations of fraud and overreaching and the weakened condition of Fraser, and alleged full performance of the contract on their part. They also set up fraud on Fraser's part in his attempted dissolution of the partnership agreement.

Charles T. Martin intervened, for the purpose of securing advantage of certain modifications in the original contract of purchase, made by Fraser just prior to the institution of this suit.

B. G. Randall, receiver of the Taos Savings Bank, also intervened for the purpose of subjecting Probert's interest in the funds, should he ultimately be adjudged entitled thereto, to certain indebtedness owing by him to the bank.

Trial was had to the Court in equity, which found the issues in the main case in favor of Bidwell and Probert, and against Fraser, and in favor of Randall, receiver, upon his claims against Probert. The intervention of Martin was determined against him. The plaintiff, Fraser, appealed to this Court, as likewise did the intervener, Martin. Subsequently, the appeal as to Martin was dismissed, at his request.

Additional facts appear in the opinion.

### OPINION OF THE COURT.

ROBERTS, C. J.—While many claimed errors are assigned, we will confine our consideration to those only which appellant has discussed in his brief, and upon the hearing of the cause in this Court.

Complaint is first made that the findings of fact made by the trial court are mere conclusions of law, and therefore, the decree made is inoperative, because not supported by findings, such findings having been requested by appellant. It would require unnecessary space to incorporate all the findings of fact and conclusions of law made by the trial court. It is perhaps sufficient, to state that the Court found: that the parties entered into the so-called partnership agreement set out in the statement of facts, on the date herein named; that pursuant to such partnership agreement, Fraser and wife made, executed and delivered to Bidwell and Probert, deeds to one-third interest each, in and to the property described in the complaint; that Bidwell and Probert performed all the conditions of said agreement, on their part to be performed; that there was a good and sufficient consideration for the said deeds; that said deeds were executed and delivered by plaintiff as his free and voluntary act, and without any undue influence or duress of Bidwell and Probert; that at the time of making such partnership agreement and executing said deeds, said Fraser was of sound mind and had the mental capacity to make said contract and execute said deeds; that the attempted dissolution of the co-partnership by Fraser, was an attempt to defraud Bidwell and Probert. Certain other facts were found not involved in this appeal, however, as such facts affected only the intervenors, Martin, and Randall, the receiver of the Taos Savings Bank.

The Court is only required to find the ultimate facts in controversy, raised by the issues in the case. Here the questions to be determined were, (1) the mental condition of Fraser at the time he entered into the contract with, and executed the deeds, to Probert and Bidwell, and, (2) were said deeds executed and delivered by Fraser to Bidwell and Probert freely and voluntarily and without any undue influence or duress on the part of either Bidwell or Probert? These were the main issues in the case, the ultimate facts which the Court was re-

quired to determine in order to render a judgment.   In 38 Cyc. 1980, it is stated:

"The setting out of matters of evidence and subordinate facts in the findings is neither necessary, nor proper, as a finding of ultimate facts necessarily includes all the probative facts, together with the inferences therefrom, and it is the province and duty of the Court to state ultimate, rather than evidentiary or probative, facts in its findings."

The Court was not required, nor would it have been proper, to set out the evidence upon which it relied in determining the ultimate facts found.   Nor does the fact that conclusions of law may have been intermixed with the findings of fact, render such findings so objectionable as to require a reversal of the case.   In the case of Baker v. De Armijo, decided at the last term of this Court, and reported in 128 Pac. 73, we quoted, with approval, the following excerpt from the case of O'Reilly v. Campbell, 116 U. S. 420, 6 Sup. Ct. 422, 29 La. Ed. 669:

"Findings are not to be construed with the strictness of special pleadings.   It is sufficient if from them all, taken together with the pleadings, we can see enough upon a fair construction to justify the judgment of the Court notwithstanding their want of precision and the occasional intermixture of matters of fact and conclusions of law."

Tested by this rule, we think the findings are sufficient to support the judgment.

Appellant next contends that the findings of fact are not supported by sufficient evidence, and further that it is the duty of this Court, this being an equity case, to review all the evidence in the record, and, regardless of the findings of the trial Court, enter such a decree as "may be agreeable to law."   In other words, notwithstanding the rule adopted and always adhered to by the Territorial Supreme Court, that it would not, where the trial Court heard all the evidence ore tenus, and thus had the opportunity of observing the witnesses while testifying, and was thereby enabled to judge from their manner and demeanor while testifying, the weight to which their testi-

mony was entitled, disturb the findings of fact made by the trial Court, if such findings were supported by substantial evidence, or, as sometimes stated, "by sufficient evidence." Of course, where the testimony is taken by an examiner, or by deposition, or is in the main, so taken, and this Court has the same opportunity as the trial Court possessed of determining the facts, the reason for the rule does not exist, and the Appellate Court will review the evidence and arrive at its own conclusion as to the facts established thereby. But, where, as in this case, the Court heard all the witnesses testify, and observed their manner, demeanor and appearance while on the stand, this Court will not review the evidence further than to determine whether or not the findings are supported by substantial evidence, in the absence of such an overwhelming weight of evidence against such findings as would clearly show that the trial Court erred in its conclusions drawn therefrom. In an equity case, where the Court hears all the witnesses testify, there is no reason for a departure from the rule. Under the old equity practice such cases were heard entirely upon written evidence, which doubtless, and correctly so, established the practice that the Appellate Court would review and weigh the evidence, but under modern practice the reason for the rule no longer exists.

Upon the trial of the case, a great deal of testimony was introduced for the purpose of showing that appellant was mentally inefficient at the time he entered into the contract of December 16, 1910. On his behalf, it was established that about six months prior thereto, he was thrown from a buggy and received a severe blow on the head, from which he was unconscious for from ten days to three weeks. Witnesses, for appellant, detailed various circumstances and conduct on his part thereafter, upon which they based the opinion that he was of unsound mind. Two physicians testified as experts, that from a review of the facts detailed by other witnesses, and examinations which they had made of appellant, he was of unsound mind at the time of making the contract. On the other hand, the

Fraser v. Bank, 18 N. M. 340.

physicians who attended him during his illness, testified
that there was a complete recovery from the injury and that
he was restored to a normal condition mentally, about two
weeks after the injury. Upon the trial, there was intro-
duced in evidence, a great many letters written by appel-
lant, dating from about four weeks after his injury to
some months after the signing of the contract in question,
all of which, without exception, appeared to have been
written by a man in possession of all his mental faculties.
Indeed, such letters were remarkably clear, explicit and
concise, and would hardly be reconciliable with mental de-
ficiency or unsoundness of mind on the part of the writer.
Again, the experts for appellant testified that the condi-
tion of his mind would naturally become worse, his intel-
lect would become gradually impaired, and that the dis-
ease with which he was suffering was "progressive." That
in no event could there be hope of improvement in his
mental condition; that at the time of the trial he was in
a worse condition mentally, or at least was no better than
he was at the time he executed the contract December 16,
1911. Appellant testified as a witness upon the trial, and
was subjected to a rigid cross examination. From his tes-
timony it appears that he knew all the details of his busi-
ness, even to the minutest details, and there is nothing
whatever to suggest an impaired intellect. It is probable
that the trial Court gave considerable weight to his testi-
mony, and his maner and conduct upon the stand, in arriv-
ing at the conclusion that he was of sound mind, as also
the letters written by him, before and after the contract
was executed. From a review of the evidence, it appears
that the findings in this respect are supported by substan-
tial evidence, and are not subject to attack here.

Nor was there any evidence of duress, fraud or over-
reaching. It is true, Fraser was, at the time he entered
into the contract with Bidwell and Probert, in straight-
ened circumstances, but neither of the appellees had any-
thing to do with bringing about such condition. The evi-
dence discloses that Fraser owed about $10,000, some of
which was past due; that his property had been sold for

taxes, and interest on some of his other debts was past due and pressing. He required for his immediate necessities, approximately $2,000, which Bidwell agreed to, and did advance under the contract. The written contract, set out in the statement of facts, it is admitted by all parties, did not express the entire agreement between the parties. All agree that Bidwell was to, and did, advance the sum of $2,000, and that he was further to drive a tunnel and develop the property and put it in shape for examination by purchasers. Immediately upon signing the contract, he repaired to the property and began work agreed to be done. Probert, on the other hand, was to find a purchaser for the property, and to pay all expenses connected therewith. Fraser contended, upon the trial, that the agreement which he made with Bidwell and Probert, did not include the deal which was consummated. That it was expressly excepted from the contract, and he was to have the right to proceed with the sale, which was being promoted by Mr. Manley, of Denver. This was denied by Bidwell, Probert not testifying. But the letters which Fraser wrote to Probert, while the Manley deal was pending and about to be consummated, furnish strong evidence that no such exception was made from the contract. He advised Probert of every detail of the proposed deal, and asked his advice. Spoke of the three acting in concert in the matter, and, we think, justified the trial Court in concluding that no exception whatever was intended by Fraser or the parties.

From the transcript of the evidence, it appears, without dispute, that Fraser sent for Bidwell to come to his house two or three days prior to December 16, the date when the contract and deeds were signed. His object was to induce Bidwell to engage with him in the tie and lumber business. Bidwell declined to go into the business, because of the uncertainty of the title to the land upon which it was proposed to operate. During the conversation, Bidwell told Fraser that he had about $2,000 in cash which he was not using at the time. That Fraser asked him to loan the money, to enable him to pay his

pressing debts and taxes; Fraser claims Bidwell agreed to do so, but this is denied by Bidwell. The next day, at Fraser's suggestion, they went into Taos and called to see Mr. Probert, who was unknown to Bidwell. The next day Bidwell and Probert had a talk, in the absence of Fraser, but at Fraser's suggestion, relative to some plan to assist Fraser. Bidwell says they agreed upon the plan which was consummated in the contract. The next day Bidwell submitted the details of the proposition to Fraser, which he accepted, he claiming, however, that the Manley deal was excluded therefrom, and that Probert was to find a purchaser for the property at a price of not less than $300,000. It will be seen that there is no suggestion of fraud or duress, or overreaching, in the above recital of the facts leading up to the making of the contract and executing the deeds. Fraser had ample time to consider the proposition, having taken the deeds out over night for his wife's signature. Mere inadequacy of consideration is not sufficient, in and of itself, to avoid a contract.

4. In the case of Eyre v. Potter, 15 How. 59, the Supreme Court of the United States say:

"Against an array of evidence like this, the question of equivalents or of the exact adequacy of consideration cannot well be raised. The parties, if competent to contract, and willing to contract, were the only proper judges of the motive or considerations operating upon them; and it would be productive of the worst consequences if under pretexts however specious, interests or dispositions subsequently arising could be made to bear upon acts deliberately performed, and which have become the foundation of important rights in others. Mere inadequacy of price, or any other inequality in a bargain, we are told, is not to be understood as constituting per se a ground to avoid a bargain in equity. For courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargain be wise and discreet or otherwise, or

profitable or unprofiitable, are considerations not for the courts of justice, but for the party himself to deliberate upon."

"Again, it is ruled that inadequacy of consideration is not of itself a distinct principle of equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle. The value of a thing is what it will produce, and it admits no precise standard. One man, in the disposal of his property may sell it for less than another would. If courts of equity were to unravel all these transactions, they would throw everything into confusión, and set afloat the contracts of mankind. Such a consequence would of itself be sufficient to show the injustice and impracticability of adopting the doctrine that mere inadequacy should form a distinct ground for relief. Still there may be such an unconscionableness or inadequacy of consideration in a bargain, as to demonstrate some gross imposition or some undue influence; and in such case, courts of equity ought to interfere, upon satisfactory ground of fraud; but then, such unconscionableness or such inadequacy should be made out as would, to use an expressive phrase, shock the conscience, and amount in itself to conclusive and decisive evidence of fraud."

Again in another case the same Court used the following language which fits the circumstances of the case at bar:—

"Enough appears in the record to convince the Court that the respondent was in straightened circumstances, that his business affairs had become complicated, that he was greatly embarrassed with litigations, that he was in pressing want of pecuniary means, but the Court is wholly unable to see that the complaint is responsible for these circumstances, or that he did any unlawful act to deprive the respondent of his property, or to create those necessities or embarrassments, or to compel him to do what he acknowledges he did do, which was to yield to the pressure of the circumstances surrounding him, and as a choice of evils accepted the advance of five thousand dollars and

Fraser v. Bank, 18 N. M. 340.

the shares assigned to him, in the new organization as proposed, and voluntarily signed both the agreement and the assignment. Such an act as that of signing those instruments, under circumstances disclosed in the record, must be regarded, both in equity and at law, as a voluntary act, as it was not attended by any act of violence, or threat of any kind, calculated in any degree to intimidate the party or to force the result, or to compel that consent which is the essence of every valid contract. Suppose he consented reluctantly, as he avers, still the fact is he did consent when he might have refused to affix his signature to the instrument, as he had repeatedly done for the year preceding, and having consented to the arrangement and signed the instruments he is bound by their terms, and must abide the consequences of his own voluntary act, and unless some other of his defenses set up in the answer have a better foundation." French v. Shoemaker, 14 Wall. 333.

Counsel for appellant next insists that the agreement, entered into by the parties, did not constitute a partnership contract, but was at most a brokerage agreement. Had the parties to the contract not treated it as constituting a partnership agreement, we would be inclined to agree with counsel, but all the acts of the parties, and circumstances in evidence, from the time of making the contract in December, until the conclusion of the sale to Martin, plainly show that Fraser, and Bidwell and Probert, recognized that a partnership existed between them, by virtue of said contract, and treated each other accordingly. Having placed a construction upon the contract, and acted thereunder, the Court will not, at this time, and after all the rights have accrued, give to the contract a different construction, which would plainly be at variance with the understanding of the parties to it. 30 Cyc. 360.

Appellant contends that, as the written agreement did not embrace the entire contract between the parties, and a part of it rested in parol, that it was a parol contract, and that the partnership agreement was within the Statute

of Frauds, first, because it was not to be performed within a year, and, second, because it concerned land.

This question is not involved in the case, however, as it was not raised by the pleadings.

What we have already said in the case disposes of appellant's contention that the Court erred in not decreeing the dissolution of the partnership. The only basis in the complaint for the dissolution of the relations between the parties was the unsoundness of appellant's mind at the time of the execution of the contract by which the partnership was formed, and the alleged fraud, duress and overreaching of appellant at that time. On these issues the Court found for the appellees; consequently, there was no ground for a decree of dissolution.

For the reasons stated, the judgment of the lower Court will be affirmed, and it is so ordered.