[No. 3203.   June 28, 1929.]

FIELD v. IRVIN.

[279 Pac. 873.]

Joseph Gill and J. S. Vaught, both of Albuquerque, for appellant.

Hunker & Noble, of East Las Vegas, for appellee.

OPINION OF THE COURT

BICKLEY, C. J.   This is a suit by appellant, hereafter referred to as plaintiff, against appellee (defendant), to enjoin the defendant from trespassing on the plaintiff's land, constituting his summer home on the Pecos river. As presented in the brief of appellant, these trespasses consisted of: (1) Trespass by fishing; (2) trespass by pasturing horses; (3) trespass by breaking fence; (4) trespass by cutting and maintaining ditch.   The charge of trespass by cutting firewood is abandoned.

The complaint contained allegations that the alleged trespasses had been continued and recurring, and that the defendant threatened to continue said trespasses. Appellant in his brief says the general question before this court is whether there is sufficient evidence in the record to sustain the complaint, viewed in the light of the fact that defendant introduced no evidence, and that the action of the court in sustaining the defendant's motion to dismiss the complaint should be considered as though the court had sustained a demurrer to the evidence.

The plaintiff presented his findings of fact and conclusions of law, which the court refused to adopt, to which action specific objections and exceptions were made and allowed. Plaintiff further presented objections and exceptions to the findings of fact and final decree made by the court, which objections and exceptions were allowed and ordered filed. The following findings, made by the court, are in accord with the allegations of the complaint:

"II—That the plaintiff is the owner and in possession of the land and real estate described in paragraph II of the complaint herein.

"III—That plaintiff has for more than 35 years on the portion of the land described in paragraph II of the complaint herein maintained a summer residence and fishing camp.

"IV.—That Mrs. E. Irvin is the owner of a small tract of land adjoining said lands of the plaintiff on the south and maintains thereon a place of public entertainment, where, for compensation, the defendant, as innkeeper, invites and receives the public and entertains all suitable persons who apply for entertainment at his said inn."

The court also made the following findings of fact:

"V—That plaintiff has not constructed and maintained around all that portion of the lands described in the complaint, which are immediately adjacent to the Pecos river, a legal fence as required by the laws of New Mexico, nor a fence equal to or greater in strength than that defined by the laws of New Mexico as a legal fence.

"VI—That the defendant, his agents, servants and employees, have never willfully turned in upon or driven upon the said land of the plaintiff any horses or any animals belonging to the defendant.

"VII—That the horses of the defendant have at times been upon the said lands of the plaintiff, but that said horses have entered

said lands at places where there was no fence, or where there was not a fence equal to or greater in strength than that required by the laws of New Mexico for a legal fence.

"VIII—That there has been no repeated or continued trespass by the defendant, his agents, servants, guests, or associates, upon the lands of the plaintiff for the purpose of taking fish from the Pecos river within the inclosure of the plaintiff or for any other purpose.

"IX—That defendant has never advised or incited his agents, servants, employees, or guests to trespass upon the lands of the plaintiff or any part thereof.

"X—That the plaintiff did not publish in any newspaper in the county of San Miguel, state of New Mexico, any notice warning persons not to hunt and fish on the lands described in the complaint as required by section 2433, Codification of 1915, Laws of New Mexico.

"XI—That the plaintiff did not obtain from the state game and fish warden the permit required by section 11, chapter 133, Session Laws of New Mexico of 1919."

"XIII—That the defendant did during the summer of 1925 without the consent of the plaintiff, enter upon the lands of the plaintiff and dig a small ditch for the purpose of conveying the waters of the Pecos river from a point on the plaintiff's land to a point on Mrs. Ed. Irvin's land, but that said ditch was used only for a short time and has since become filled up and abandoned. That the defendant is not now using said ditch and does not threaten to continue to use the same in the future.

"XIV—That the defendant did cut the wires of the fence of the plaintiff for the purpose of taking out said ditch, but immediately thereafter repaired said fence, and has not threatened to cut or continue to use said opening in the future.

"XV—That there has been no continued trespassess by the defendant or threats to continue said trespasses, as alleged in the complaint."

From these findings of fact, the court, as conclusions of law, found:

"(2)—That there has been no continued or threatened trespass upon the lands of the plaintiff by the defendant.

"(3)—That the plaintiff is not entitled to the injunction nor to the relief prayed for."

These findings of fact expressed the converse of what was alleged in the complaint as a basis for injunctive relief, so it is not necessary to set out at length the allegations of said complaint, which in the main were denied. In considering on review questions of fact and findings

thereof specifically with respect to equitable actions, we have said:

"Where the evidence in an action for an injunction is conflicting, specific findings of fact will not be disturbed."

Ariz. & C. R. Co. of New Mex. v. Denver & R. G. R. Co., 16 N. M. 281, 117 P. 730.

"Where the trial court hears all the witnesses testify, and is thus able to observe their manner and demeanor while testifying, the appellate court will not review the evidence further than to determine whether or not the findings are supported by substantial evidence, in the absence of such an overwhelming weight of evidence against such findings as would clearly show that the trial court erred in its conclusions drawn therefrom; and in an equity case, where the court hears the witnesses ore tenus, there is no reason for a departure from the rule."

Fraser v. State Sav. Bank, 18 N. M. 340, 137 P. 592.

Taking up the alleged trespasses in inverse order, we find that with respect to the trespass by cutting and maintaining ditch that the court found in its finding of fact No. 13, supra, in part in favor of plaintiff, in that the defendant did in the summer of 1925, without the consent of the plaintiff, enter upon the lands of plaintiff and dig a small ditch, for the purpose of conveying the waters of the Pecos river from a point on the plaintiff's land to a point on Mrs. Ed. Irvin's land; but the court went on to say that said ditch was used only for a short time and has since been filled up and abandoned, and that the defendant is not now using said ditch, and does not threaten to continue to use the same in the future. So it appears that this was an isolated trespass, and lacked the elements of actual or threatened continuousness. The evidence supports the court's finding of fact, and we find no fault with the application of the law thereto.

(3) Trespass by breaking fence: It was admitted by defendant that he cut the wires of the fence for the purpose of taking out the ditch heretofore referred it, but it appears that it was repaired, and there was no evidence that there was any breaking or cutting of plaintiff's fence, other than this one time, or that there were threats to again do so. We find no error in the court's disposition of this alleged continuing and threatened trespass.

(2)  Trespass by pasturing horses: This alleged trespass is disposed of by the court's findings of fact Nos. V, VI, and VII.  The evidence shows that there were places where defendant's horses could get through plaintiff's fence of their own volition; so we have to turn to an examination of the record to see particularly whether the defendant, his agents, and employees have wilfully turned in upon or driven horses upon the land of plaintiff.  There was some evidence of interference with plaintiff's gates, but it is not satisfactorily shown who so interfered.  The strongest circumstance was that horses' foot tracks were seen to a pronounced degree near the opening made by defendant in the wire fence for the purpose of cutting the ditch, and which opening had been repaired with baling wire and which could easily be unfastened.  There was no evidence, however, as to who may have untied such fastening, if in fact it was untied.

As the testimony shows, there are large numbers of pleasure seekers who frequent the banks of the Pecos in the vicinity of the property of plaintiff and defendant in the summer months.  We do not doubt that such persons frequently seek the line of least resistance in going through fences, and are not always careful in making replacements.  There seems to be no reason to presume the defendant was the one who may have left this weak spot open.  The allegations of the complaint required proof that the defendant, his agents, servants, and employees, unlawfully turned defendant's horses in, upon, or drove them upon, the lands of the plaintiff.  There was no direct proof to sustain these allegations and we are unable to say that the circumstances shown were strong enough to supply such proof in the face of the finding of the court to the contrary.

(1)  Trespass by fishing:  The complaint, among other things alleged:  That the defendant "has personally and through his agents, servants, guests, associates, and confederates, who have been thereto incited by the said Irvin, have clandestinely, and against the will of this plaintiff, entered in and upon the close of the plaintiff hereinbefore described, and have unlawfully and contrary to the right

of the plaintiff, taken fish from the waters of the said Pecos river within the said enclosure and have disregarded the signs and warnings conspicuously displayed by the plaintiff upon trees and in other places within the enclosure, and have taken from the said waters of the Pecos river within the plaintiff's inclosure, large numbers of fish of great value, without the permission and against the will or consent of the plaintiff, as was well known to the said defendant and his said agents, servants, guests, associates, and confederates, at the time the said fish were so taken, to the great and irreparable damage and injury of the plaintiff, and in such manner and to such an extent as to seriously impair the plaintiff's enjoyment of his said property for the purposes and in the manner to which it was susceptible of enjoyment."

It was argued by defendant's counsel at the trial that proof of fishing, without the taking of fish, did not make out the case alleged in the complaint. The court, however, by his rulings at the trial and by his finding of fact No. VIII, viewed the matter differently, and proceeded on the theory that repeated or continued trespasses or threats to continue same upon the lands of the plaintiff, "for the purpose of taking out fish from the Pecos river within the inclosure of the plaintiff or for other purposes" would make out plaintiff's case.

In appellant's brief is set forth the evidence we are invited to consider as showing that the court erred in his findings of fact. That of the plaintiff on this charge of trespass was as follows:

Mr. Field testified (Transcript, 43):

"I saw two men fishing in the stream along towards the southern boundary of my land. I spoke to them and called them over. They finally came, and one of them was Thomas Irvin, the minor son of the defendant, whom I have known for many years, and the other was apparently a guest of the Irvin management. I asked this young man if he didn't know that I did not permit fishing within my fence, and he said he did, and I asked him by what right he claimed to violate my wishes in that regard, and he said he didn't claim to have any legal right, but he had a moral right. We had some further conversation, the result of which was he left. At that time the place was posted with signs issued by the state game warden; I think Mrs. Melaven."

Transcript, 48, by Mr. Field:

"I can't fish any more, because my eyesight is so bad I can't. see the flies, but I do like to go down to the river and pretend I am fishing, and I hardly ever have gone down there that I haven't found tracks of people who have been fishing there. I don't know where they came from."

That of the other witnesses in substance was:

Prudencio Gonzales:

"I just saw Mr. Irvin and his son once in the early part of June, 1925."

Pablo Gonzales:

"I saw a few of the guests fishing there in 1924. I never saw Mr. Irvin with his guests fishing. I saw guests, and I saw him Irvin) once. I don't know if he was fishing; he had his pole with him, but I didn't see him take out any fish."

Pedro Lopez:

"I saw Mr. Irvin there in 1924; did not see any guests with him. I don't know whether he was fishing or what he was doing. He had his fishing tackle with him the few times I saw him."

In 2 First Decennial Dig. Appeal and Error, Key 1009 (1) (bb), are quoted cases in support of the head-note, stating:

"The decision of the chancellor on questions of fact, arising on oral testimony heard before him, will not be reversed unless plainly wrong."

It is said in 32 C. J. on Injunctions, p. 347:

"In accordance with general rules, the burden of proving the right to injunctive relief is on complainant. Injunction is a harsh remedy and he who seeks it must show himself entitled to it."

In view of this and our own holdings, quoted supra, we are unable to say that the trial judge, sitting as a chancellor, was plainly wrong in making his findings of fact and conclusions of law and the decree based thereon.

For the reasons given in the foregoing opinion, the judgment and decree is affirmed; and it is so ordered.

WATSON and PARKER, JJ., concur.

CATRON and SIMMS, JJ., not participating.