360 P.2d 395

Harold J. DRAKE, Plaintiff-Appellant,

v.

Melvin D. RUECKHAUS, Ped S. Watkins and Catorce Corporation, Defendants-Appellees.

No. 6646.

Supreme Court of New Mexico.

March 15, 1961.

Adams, Foley & Calkins, Albuquerque, for appellant.

Botts, Botts & Mauney, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for appellees.

CARMODY, Justice.

Appellant, plaintiff below, seeks to reverse the trial court's dismissal of his complaint, which sought damages for an alleged breach of a claimed trust relationship.

The actual questions for decision are: (1) Whether appellees occupied a position of trust, and, if so, whether the same was breached; (2) was appellant entitled to a jury trial; and (3) should the trial court have ordered the corporate appellee to exchange certain stock certificates.

The controversy arose out of the uranium speculation which assumed astounding proportions during the early 1950's in New Mexico and southwestern United States. During this period, many people became involved in what appeared to be "get rich quick" schemes, in the purchase of mining claims and the purchase and sale of stock in the many corporations which were formed to participate in the uranium gamble. To most individuals, it was discovered, to their sorrow, that their investments became of little value, although the stocks of some of the corporations were at one time or another quoted at rather astronomical figures. As is usual in matters such as this, only a few of the claims proved of considerable value, and fewer yet of the corporations remained permanently solvent. We should add, however, that we intend no reflection on those organizations which were estab-

lished on sound business principles and continue to operate on this basis today.

It seems that in the Spring of 1953, the appellee Rueckhaus held an option on ten unpatented mining claims. To raise funds for the development and marketing of them and to pay for the cost thereof, appellee formulated a plan of selling an undivided interest in certain of the claims. The appellant was one of those who invested $1,000. Rueckhaus would sell a one-sixth interest in one of the ten claims for the sum of $1,000, reserving the right to unitize the ten claims and providing that the holder of the undivided one-sixth interest in the one claim might receive an income in the equivalent of one-sixtieth of the entire group of claims. Twenty-one units of the sixty were retained by Rueckhaus, so only thirty-nine were actually sold on the above basis. The entire group of claims was incorporated under the name "Fourteen Group," and steps were taken by Rueckhaus to develop the claims. This included drilling and exploration work of considerable value, paid for by the conveyance of a fifty per cent mineral interest.

Eventually it developed that the claim in which appellant had a one-sixth interest, known as the "Blondy Mining Claim," was the principal claim under which a substantial and valuable body of ore was located.

Thereafter, it was determined to merge the Fourteen Group, Inc. with the Federal Uranium Corporation of Nevada, but this was done in an indirect manner by the incorporating of the Catorce Corporation. It was understood that the Catorce Corporation would receive the stock of the Federal Uranium Corporation of Nevada and the stockholders in the Fourteen Group would receive stock in the Catorce Corporation, with a subsequent right in the owners of the Catorce Corporation to have the Federal Uranium stock issued to them, but that this could be done only after the lapse of a certain length of time, in order that the stock would not be subject to disposal on the market until the time agreed upon.

Appellant alleged that a great many of the transactions were performed without his knowledge and consent, and that there was a withholding of considerable information from him by Rueckhaus, or Watkins as his agent. Appellant did, however, assign the original certificate, which he had been given by Rueckhaus, to the Catorce Corporation, and was in exchange issued some 10,637 shares of the Catorce Corporation stock. Appellant sold 1,659 shares for $9,954, but still holds 8,978 shares thereof.

The trial court found that neither of the defendants at any time made any false representations to the plaintiff, nor did they conceal any facts concerning the activity with respect to the claims, and these findings by the court are not attacked as provided in our rules, although appellant does seek

to generally assert that the findings of the trial court were not based upon substantial evidence.

Appellant's principal contention is that the instrument given to him by Rueckhaus upon the payment of $1,000, together with an admission in the pleadings when considered with certain of the testimony, established a trust as between the appellant and the defendant Rueckhaus. The instrument referred to is as follows:

"Trust Certificate

"Received from Harold J. Drake, the sum of One Thousand ($1,000.00) Dollars, covering a one-sixth (⅙) undivided interest in and to the Blondy unpatented mining claim, recorded in the office of the County Recorder of San Juan County, Utah, in Book 23, Page 18. The undersigned makes the following representations:

"1. That he, as trustee, has an exclusive option to the above described mining lease, among others.

"2. That if defects in title should cause the deal to be not acceptable, the money will be refunded to the above named party.

"3. That he will act for the above named party in securing the lease, proving same and marketing the lease.

"4. That he shall have the right to unitize this ownership interest with the owners of other interests in the 'Fourteen Group', compromising [sic] ten (10) unpatented mining claims, so that the holder hereof might receive an income of the equivalent of one-sixtieth (1/60) of the income of the entire 'Fourteen Group'.

"s/ Melvin D. Rueckhaus
"Melvin D. Rueckhaus, Trustee

"(Acknowledged)."

Paragraph 2 of count No. 2 of the complaint alleged as follows:

"2. By reason of the premises, defendant, Melvin D. Rueckhaus, became and was a trustee with the duties, powers and responsibilities set forth in said trust certificate and which naturally follow, under the law, from the relationship existing between the parties by reason of the facts alleged herein."

The above allegation was admitted by the defendants. Thus, the question would seem to be: For whom was Rueckhaus acting as trustee? Quite obviously, from the above certificate and the pleadings, he was acting in such capacity for someone, and he so admitted in his testimony; but the trial court did not feel that it was established that Rueckhaus was a trustee for Drake, and the mere fact that he was referred to as a trustee in the above certificate, nor the admission that he was "a trustee," do not of themselves make him a trustee for appellant.

The trial court found that Rueckhaus, under this certificate, was acting as trustee for himself, Watkins, and one W. E. McCormick, and the court's conclusion was that Rueckhaus was trustee for the three persons and "not as trustee for anyone else." Appellant cites limited portions of the testimony, in an effort to convince us that the trial court's finding was in error and that, on the contrary, the court should have found that Rueckhaus was trustee for appellant. Appellee, in turn, has quoted a considerable portion of the record, to show that there was substantial evidence upon which the trial court's findings were based.

■ Although appellant specifically attacks the findings of the trial court as to for whom Rueckhaus was acting as trustee, appellant admittedly failed to literally comply with our rule 15(6) (§ 21–2–1(15) (6), N.M.S.A.1953 Comp.), in failing to state the substance of all of the evidence bearing on the proposition, with proper references to the transcript. Appellant seeks to explain his failure to include this testimony on the theory that parts of the testimony of Rueckhaus and Watkins were obviously conflicting and that therefore the testimony became improbable and, as a consequence, need not be included in the brief. Allied to this, appellant also urges that a flexible application should be given that portion of the rule which states:

"A contention that a * * * finding of fact is not supported by substantial evidence will not *ordinarily* be entertained." (Emphasis added.)

Novel as such a theory may be, it should suffice to answer the same to say that it is the province of the court, not counsel, to determine whether or not testimony is substantial or improbable, and it would be a complete disregard of the rule for the court to accept counsel's determination of such a serious matter, rather than passing on it itself. Such an explanation fails to appeal to the court, for to accept the same would practically eliminate the rule.

■■ The record itself consists of three large volumes of testimony and exhibits, and we will not search the record to determine that which appellant has the burden to point out to us under the rules. We have, however, carefully examined the entire record and conclude therefrom that the trial court's findings are based on substantial evidence. We will not substitute our judgment for that of the trial court as to the credibility of the witnesses. Field v. Irvin, 1929, 34 N.M. 199, 279 P. 873; Greene v. Esquibel, 1954, 58 N.M. 429, 272 P.2d 330; Luna v. Flores, 1958, 64 N.M. 312, 328 P.2d 82; Hall v. Bryant, 1959, 66 N.M. 280, 347 P.2d 171.

Appellant's second point relates to the refusal of the trial court to allow him a jury trial as to his second cause of action.

Appellant's complaint consisted of four separate causes of action. The first was for damages on the basis of false and fraudulent representations; the second was also for damages, by reason of the breach of trust; the third count sought to have the Catorce Corporation cancel certificates of shares of stock issued to the appellees Rueckhaus and Watkins; and the fourth count sought to force the Catorce Corporation to transfer the Federal Uranium Corporation of Nevada stock to the plaintiff in exchange for his shares in the Catorce Corporation.

Appellant asked for a jury trial, but his demand therefor was stricken and the case proceeded to trial before the court on the second, third and fourth causes of action—the record does not disclose any disposition of the first cause of action, except that the court ordered that a jury trial would be had after the completion of the trial to the court of the non-jury issues.

██ Appellant's argument is based upon the premise of the existence of an express trust, and proceeds therefrom to urge that appellant was entitled to a jury trial for damages for breach of the trust. However, from what we have heretofore said, it is apparent that no trust existed, and therefore the basic premise falls. It requires no citation of authority that the declaration of trusts and the enforcement thereof are equitable proceedings. We recognize that there is authority to the effect that if the trust is admitted and the amount of damages liquidated (which is also questioned here), that in such event the beneficiary may maintain an action at law to enforce the payment. See, Restatement of the Law, Trusts, 2d ed., § 198. However, this same text (§ 198e) makes the exact distinction which we are here attempting to draw—that "an action at law cannot be maintained against a trustee for damages for a breach of trust as distinguished from an indebtedness arising out of a breach of trust." See, also, 4, Part 1, Bogert, Trust & Trustees 464, § 871; 1 Pomeroy's Equity Jurisprudence, 5th ed., §§ 153 and 158; Tibbitts v. Fife, 1958, 162 Cal.App.2d 568, 328 P.2d 212; State ex rel. Duggan v. Kirkwood, 1948, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216.

█ Here, the case involved the application of equitable doctrines and the granting of relief (the establishing of a trust), which could be obtained only in a court of equity and not elsewhere. In other words, it would appear to us that this cause of action is a suit primarily to establish a trust, and the right to damages is dependent upon the appellant's establishing of the trust. In such a case, there can be no question but that jurisdiction is vested in a court of equity and not in a court of law, and it follows therefrom that the appellant was not entitled to a jury trial as a matter

 

of right as to this cause of action. Mogollon Gold & Copper Co. v. Stout, 1907, 14 N.M. 245, 91 P. 724. For a comprehensive and exhaustive analysis of the distinction between law and equity and the right to trial by jury, although the case is not in point here, see, Young v. Vail, 1924, 29 N.M. 324, 222 P. 912, 34 A.L.R. 980. It is noted that appellant's cause of action as alleged in the first count of the complaint still remains to be tried on the legal, as distinguished from equitable, theories of false and fraudulent representations.

From what has been said, therefore, we find no error in the action of the trial court in striking the demand for jury trial as to counts 2, 3 and 4.

Appellant lastly claims error in the refusal of the trial court to direct the exchange of stock.

The trial court's finding No. 18 is as follows:

"Defendant Catorce Corporation did not, at any time, agree with or represent to plaintiff that plaintiff would receive stock of Federal Uranium Corporation of Nevada in exchange for his interest in said Fourteen Group Claims or for his stock in Catorce Corporation."

and the same is in no sense attacked by appellant. We are therefore bound by such finding, and determine that there is no merit in appellant's contention.

The judgment is therefore affirmed. It is so ordered.

COMPTON, C. J., and FRED J. FEDERICI, District Judge, concur.

CHAVEZ and MOISE, JJ., not participating.