## KING v. STROUP.

### SYLLABUS BY THE COURT.

1. Where an administrator pays debts and legacies prematurely or without authority of law, at the request or by the insistence of the sole beneficiary of the estate, the latter is estopped from subsequently questioning the legality of such payments.

P. 243

2. Where one's conduct has led another to take a position detrimental to his interest, the former will not be heard to say that he is not estopped because of his ignorance of his legal rights in the first instance, provided he has full knowledge of the facts.

P. 248

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by Ruth L. King, administratrix of the estate of Lewis H. King, against A. B. Stroup. From a judgment for defendant, plaintiff appeals. Affirmed.

NEILL B. FIELD and JOHN VENABLE, both of Albuquerque, for plaintiff in error.

MANN & NICHOLAS of Albuquerque, for defendant in error.

## OPINION OF THE COURT.

PARKER, J.—This is an appeal from the judgment of the district court of Bernalillo county approving the final account rendered under the statute (section 2298, Code 1915) by appellee, as administrator with the will annexed, and discharging him and his sureties on the administrator's bond.

Lewis H. King died in Albuquerque on July 23, 1913, leaving surviving him as his only heir at law the appellant, Ruth L. King. On August 15, 1913, there was filed for probate an instrument purporting to be the last will and testament of the said Lewis H. King, deceased. That instrument attempted to devise certain land to appellant, and to bequeath $1,000 to a Mrs. F. H. Gross, and $3,000 in trust for appellant, under certain specified conditions. On October 8, 1913, the said instrument was admitted to probate, and appellee was appointed administrator with the will annexed of the said estate, and qualified the same day. It would appear that appellee was appointed as such administrator because of the non-residence of the executor named in the will and the desire of the appel-

lant that he should undertake the administration of the estate.   Shortly after being appointed, appellee received the proceeds of a certain life insurance policy written on the life of the deceased and made payable to his personal representatives, as well as a sum of money constituting renewal premiums on insurance apparently written by deceased. Thereafter, and within less than 60 days after being appointed, appellee, without the order of the court, paid claims against the estate in the sum of $1,020.65. On November 25, 1913, appellee presented an account to the probate court showing the payment by him of said claims, and the court thereupon approved the same.   On January 13, 1914, appellee verbally reported to the probate court that there remained in his hands, as assets of the estate, the sum of $4,000, whereupon the probate court ordered him to pay therefrom $1,000 to Mrs. F. H. Gross, and $2,500 to the Mercantile Trust Company of St. Louis; the latter sum to be held in trust for appellant, under the terms of the alleged will, both items being legacies provided for therein.   Appellee shortly thereafter made such payments.

On February 2, 1914, appellant petitioned the probate court for the revocation of the letters issued to the appellee. This petition was dismissed, an appeal perfected to the district court, and the prayer of the petition granted in that court, ordering that the estate be administered as though the said Lewis H. King had died intestate.   Thereafter the appellant was appointed administratrix of the estate, demanded an accounting from appellee, and, when made, objected thereto, principally on the ground that the payments of the debts and legacies were premature and unauthorized, and hence the appellee should not receive credit therefor.

[1]   The appellant assigns 20 grounds of alleged error, but she argues only four general propositions.   In effect those propositions are:  That the payment of the debts and legacies were void acts; that the proceeds of the insurance policy were not subject to the payment of debts; that appellant is not estopped from objecting to the legality of said payments; and that appellee should

be required to pay over to appellant the entire assets of the estate as received by the former in the first instance.

The only question which will be considered is whether the appellant is estopped from claiming that the disbursements of the assets were illegal, for a determination of that question will dispose of this case. At the outset we shall assume, without deciding, that the payment of the debts and legacies prior to the expiration of six months after the appointment of the administrator with the will annexed and without an order of distribution made by the probate court was at least irregular and was made at the personal peril of the appellee. On behalf of the appellant it is contended that there were no false representations or concealment on the part of appellant in this matter, and the argument is then made attempting to show that the facts of the case do not justify the conclusion that the appellant's conduct constitutes estoppel by false representations. On behalf of appellee it is argued that the debts and legacies were paid at the instance and behest of appellant, and that the latter cannot now, after appellee relied and acted upon such representations, assume an attitude inconsistent with that position, to the detriment of appellee.

In 16 Cyc. 785, the doctrine is thus stated:

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another. It is upon this principle that a person is said to be estopped to take advantage of his own fraud or wrong. So where a person has acted or refrained from acting in a particular manner upon the request or advice of another, the latter is estopped to take any position inconsistent with his own request or advice, to the prejudice of the person so induced to act."

Equitable estoppel or estoppel in pais will be found fully discussed in all its phases in 10 R. C. L. p. 688 et seq. On page 689 it is said:

"Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application. * * *

nor hampered by the narrow confines of a technical formula. So while the attempted definitions of such estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case. * * * The cases themselves must be looked to and applied by way of analogy, rather than rule."

The author then ventures the following summary of the rule.

"That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon."

See Bigelow on Estoppel (5th ed.) and the sixth edition, p. 602 et seq.

Shortly after the death of the deceased the appellant left New Mexico and did not return until January 26, 1914. During the time she was absent from the state she corresponded with the appellee with reference to the matters of the estate. She first consented that he should act as administrator, then stated that she preferred that the debts be paid from the personal property of the estate, rather than from the real estate, declaring that the real estate could not be sold on such short notice. Appellee advised her that as the insurance policy was made payable to the estate all the debts could be paid from the proceeds thereof, and that after the payment of the debts the legacies would be paid. Appellant stated that she knew he would settle the matters of the estate as quickly as possible, saying that they worried and irritated her. Appellant was advised by appellee that the probate court would be in session in September, 1913, and that shortly thereafter the matters of the estate would be settled. In a letter of subsequent date, appellant said that she wished very much to get the bills paid, especially one in favor of a bank. Appellee thereafter, on September 24, 1913, sent appellant a list of bills against the estate, all of which were approved by appellant with the exception of one item. On September 27, 1913, appellant again

inquired as to how soon the matters of the estate would be settled. Several days thereafter she advised a creditor of the estate to present his bill for services against the estate, saying that the probate court would meet on October 6, 1913, and that all bills would be paid as soon after that as possible. On November 3, 1913, appellee wrote the appellant to the effect that he had not yet received the insurance money, but that he expected to receive it that week, in which event he would "settle things so fast as I can." On December 16, 1913, appellee was given to understand by the appellant that he was free to go ahead and settle the affairs of the estate as fast as he could, saying that she wished he would rush matters as fast as possible. To the same effect was a letter from appellant to appellee under date of December 30, 1913. In this letter appellant proposed that she present a bill against the estate for $500, so that there would remain but $2,500 to be placed in trust under the terms of the will, to which appellee consented, provided Mrs. Gross would approve of such a bill, and both would release him from liability in the premises.

The appellee testified that he relied on the matters contained in the letters of Mrs. King to him, and that the matter of the settlement of the estate was effected as quickly as possible because of the express desire of the appellant that it should be so. Appellant testified that she would not have permitted the debts to be paid out of the insurance money had she known that under the law the insurance money was not subject to the payment of debts.

It is clearly evident that in the first instance the appellant took the attitude that the debts and legacies should be paid at once. It is just as evident that the appellee hastened to pay the debts and procure the order of the court to pay the legacies to accommodate the appellant. He, it appears, sought to administer the estate in conformity with the wishes of the parties who were beneficially interested therein. Appellant now assumes an attitude with respect to the disbursements of the assets entirely inconsistent and at variance with that first pro-

posed by her and acted on by appellee at her special instance and request. The disbursements were made in accordance with her wishes, and it would be inequitable and unjust for her now to be allowed to take a different position with success. The facts of this case are such that the doctrine of estoppel in pais is especially applicable. While we have been cited to no case where the facts are similar to the one at bar, it appears to us that the doctrine is well illustrated in those cases wherein the heirs and the administrator have agreed that a certain business be continued after the death of the intestate, and the courts have held that such facts estop the parties injured thereby from claiming damages or reimbursement from the administrator. Such is the case of Poole v. Munday, 103 Mass. 174. The court said:

"An administrator who, in a particular transaction, acts in good faith, under the direction of all the personal representatives who are interested in the estate, is to be protected, in rendering his accounts in the probate court, from a claim, on the part of such representatives, that he has not administered strictly according to law in respect to such transaction. He may prosecute or defend suits, compromise claims upon the estate, or deal with the assets in a particular way, not usual or strictly legal, as by continuing the property in business; and the personal representatives, by whose request or assent it has been done, will not be permitted to charge him with maladministration."

In Swaine v. Hemphill, 165 Mich. 561, 131 N. W. 68, 40 L. R. A. (N. S.) 201, the court said:

"We are of opinion that it was the conviction of all the complainants, as well as of Mr. George, * * * that it was best to continue the business in the hope that it might be disposed of as a going concern. Changes and improvements in the method of manufacturing malt * * * made it impossible to realize this hope. It would be unjust and inequitable to now compel this defendant to bear the loss occasioned by this course of action."

Again the court said:

"There seems to be no doubt, however, that, when all those interested in an estate agree that a certain course should be followed, the executor or administrator will be relieved from personal liability if disaster follows."

A number of cases will be found collected in the note to the last-cited case, reported in 40 L. R. A. (N. S.) 201, note page 234. The conduct of appellant in the case at bar was such as to cause appellee to pursue the course he did pursue. Assuming that such course was a deviation from the strict letter of the law, or was without authority of law, it makes no difference, because the appellant cannot now be heard to say that the action taken was void, or that it resulted in casting upon appellee personal liability in the premises, unless the doctrine of estoppel should not be applied because of the asserted ignorance by appellant of her legal rights in the premises at the time the conduct creating the estoppel arose.

[2] It is urged by appellant that she did not know of the invalidity of the will; that appellee did not advise her of the same, but rather concealed such knowledge from her; that she had been advised by appellee that the proceeds of the insurance policy were subject to the payment of the debts of the estate, and therefore she believed that the same was true; that she had no information upon such matters except that derived from appellee; and that her mistaken belief as to her legal rights was founded on ignorance—hence the doctrine of estoppel cannot be applied.

The record discloses that appellee was employed as administrator, not as legal adviser of the appellant; that appellee did give it as his opinion that the life insurance money might be used to pay the debts of the estate; that appellee did not occupy the relation of attorney to the appellant, and was under no obligation to advise her concerning her rights; that appellee did not conceal from the appellant the fact that she might contest the will, nor did he lead her to believe that the same was valid, but simply conducted himself on the assumption that the same was valid; that both of the parties were fully cognizant of all the facts, but that both were mistaken as to the law in regard to the insurance money being available to pay the debts, assuming that such is not the case under the law of this state.

In 10 R. C. L. at pages 695, 696, it is said that while some cases hold that a party is not estopped when he is ignorant of his legal rights, yet "ignorance of his legal rights will not prevent one's conduct from working an estoppel, if he has full knowledge of the facts."

In Rogers v. Portland, etc., Railway Co., 100 Me. 86, 92, 60 Atl. 713, 715, 70 L. R. A. 574, 579, the court applied the rule that ignorance of one's legal rights would not prevent the estoppel from being applied in a proper case, saying:

"But it is urged that the plaintiff, in thus assuming the rights of an owner in making the contract with Gerald, and in failing to give him notice of the true state of facts, acted innocently or thoughtlessly, with no fraudulent design to mislead and deceive Gerald, and that he was ignorant of his legal rights, or want of them, in the premises. Assuming that this is so, it is no answer to the estoppel. * * * 'But it is not necessary that the original conduct creating the estoppel should be characterized by an actual intention to mislead and deceive.' Neither would ignorance upon the part of the plaintiff of his legal rights, provided he had full knowledge of the facts, be an answer to the estoppel relied upon. We again quote from Martin v. Maine C. R. Co., 83 Me. 100, 21 Atl. 740: 'The presumption is that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them; and nothing can be more liable to abuse than to permit a person to reclaim property, in opposition to all the equitable circumstances stated upon the mere pretense that he was at the time ignorant of his title." (Authorities.)

In note at page 773, to the case of Knauf v. Elkhart Lake Sand & G. Co., reported in 48 L. R. A. (N. S.) 744, and also in 153 Wis. 306, 141 N. W. 701, will be found several cases holding that ignorance of one's legal rights will not prevent the application of the doctrine of estoppel in pais where the facts and circumstances otherwise justify it. The author of the note says:

"It seems that positive acts will be ground for estoppel although done in ignorance of law. This view is in harmony with the view of the courts on the matter of mistake of fact."

We are aware that there are cases holding to the contrary of this doctrine, but we regard the rule stated as

applicable in this case. The entire argument ·of appellant as to why estoppel should not be applied in this case, although able and exhaustive, does not convince us. Without answering such argument in detail it is sufficient to say that under the facts and circumstances of this case the appellant cannot now change her former position to the detriment of appellee.

The judgment of the trial court will therefore be affirmed, and· it is so ordered.

ROBERTS, C.J., and HANNA, J., concur.

### ON MOTION FOR REHEARING.

PARKER, J.—A motion for rehearing has been filed upon the ground that the opinion is in conflict with the law of estoppel as laid down by the Territorial court in Dye v. Crary, 13 N. M. 439, 85 Pac. 1038, 9 L. R. A. (N. S.) 1136, which case was not called to the attention of the court by counsel. Just why the decision in the case at bar is in conflict with the Dye-Crary Case is not pointed out in the motion nor in the statement of counsel accompanying the same.

Inasmuch, however, as the doctrine involved is of much importance we have re-examined the Dye-Crary Case with the view of pointing out that there is no conflict between it and the case at bar. In that case a mining claim had been sold under an alias writ of attachment which was held by the court to have been void because not authorized by the statute. Crary and Heiniman took an option to purchase the property from the execution purchaser, and during the pendency of the option they had a conversation with the plaintiff, Dye, as follows:

"Mr. Dye visited the mine and while there in the presence of Mr. Alexander and Mr. Crary, I told him that I was about to make the payment for· the property in full, and I asked him if he knew of any conflicting claim or any other claims on the compromise. He immediately answered there was. The Scranton claim took off about 100 feet, and he said as to other claims there would be nobody but himself. And he says 'I have allowed all my time to lapse and I have no claim whatever.' With that he wished me success and hoped it would prove a good mine."

King v. Stroup, 22 N. M. 241.

It appeared that, at the time of this convernation, Dye was ignorant of the law and was not aware that the attachment proceedings were void. The court held that this statement or admission by Dye was a mere statement of his supposed legal rights, and not of a matter of fact. It is pointed out by the court that Dye, having no knowledge that the proceedings in attachment were void for want of jurisdiction, could not have been guilty of fraudulent representation or concealment when he had the conversation. In that connection the court cited Brant v. Virginia, etc., Co., 93 U. S. 326, 23 L. Ed. 927, as to the effect where an admission in regard to the condition of a title is relied upon by way of estoppel there must generally accompany such admission some intended deception in the conduct or declarations of the party to be estopped or such gross negligence on his part as to amount to constructive fraud. The court also cited Henshaw v. Bissell, 18 Wall. 255, 21 L. Ed. 835, to the same effect. It was upon the principle announced in those cases and others cited that the trial court held that Dye was not estoped by his admission that he had lost his claim because he had allowed his time to lapse; such statement being unaccompanied by inducement or representation held out to Crary and Heiniman to influence them to buy the claim.

The principal reason, however, for holding that Dye was not estopped was because Crary and Heiniman did not rely upon his admission, and therefore were not misled thereby to their detriment.

We see no conflict between the Dye-Crary Case and the case at bar, inasmuch as the facts are entirely different. In the case at bar, as pointed out in the opinion, both parties were mistaken as to the law, it is assumed, but the appellant, by her affirmative conduct and direct insistence, put the appellee in a position to his detriment and from which he cannot now recede without pecuniary loss.

For the reasons stated the opinion will be adhered to, and it is so ordered.

ROBERTS, C.J., and HANNA, J., concur.